1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEE CLARENCE FANE,<br><br>      Plaintiff,<br><br>      v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>      Defendant. | Case No.  1:23-cv-01762-SAB<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING CLERK OF THE COURT TO ENTER JUDGMENT IN FAVOR OF THE COMMISSIONER OF SOCIAL SECURITY AND TO CLOSE THIS ACTION<br><br>(ECF Nos. 17, 21, 24) |

## I.

## INTRODUCTION

Lee Clarence Fane ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

    Plaintiff requests the decision of Commissioner be vacated and the case be remanded for payment of benefits or in the alternative further proceedings, arguing the ALJ erred by misapplying the Chavez presumption of continuing nondisability; the residual functional capacity is not supported by

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes.  (See ECF Nos. 8, 9, 10.)

1

1  substantial evidence because the ALJ failed to incorporate the opinion of Nurse Practitioner Saucier,

2  and the ALJ failed to provide clear and convincing reasons to reject his symptom testimony.

3      For the reasons explained herein, Plaintiff's motion for summary judgment shall be denied.

4  **II.**

5  **BACKGROUND**

6  **A.    Procedural History**

7      Plaintiff previously filed applications for a period of disability and disability insurance

8  benefits and supplemental security income that were denied on September 16, 2013.  (AR 65.)

9  Plaintiff filed an application for supplemental security income that was denied on August 16, 2018.

10  (AR 62-74.)

11      Plaintiff protectively filed the instant application for supplemental security income on

12  December 20, 2019.  (AR 97.)  Plaintiff's application was initially denied on April 24, 2020, and

13  denied upon reconsideration on March 23, 2021.  (AR 79-81, 115-19.)  Plaintiff requested and

14  received a hearing before Administrative Law Judge Scot Septer ("the ALJ").  Plaintiff appeared

15  for a hearing on November 15, 2022.  (AR 32-61.)  On December 5, 2022, the ALJ issued a decision

16  finding that Plaintiff was not disabled.  (AR 15-27.)  On October 17, 2023, the Appeals Council

17  denied Plaintiff's request for review.  (AR 1-3.)

18      **B.    The ALJ's Findings of Fact and Conclusions of Law**

19      The ALJ made the following findings of fact and conclusions of law as of the date of the

20  decision, December 5, 2022:

21      1.  Plaintiff has not engaged in substantial gainful activity since December 20, 2019, the

22          application date.

23      2.  Plaintiff has the following severe impairment: schizophrenia.

24      3.  Plaintiff does not have an impairment or combination of impairments that meets or

25          medically equals the severity of one of the listed impairments.

26      4.  Plaintiff has the residual functional capacity to perform a full range of work at all

27          exertional levels but with the following nonexertional limitations: Plaintiff is able to

28          perform jobs of a noncomplex nature requiring the performance of no more than simple,

routine tasks, and should have no contact with members of the general public.

5. Plaintiff has no past relevant work.

6. Plaintiff was 51 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed.

7. Plaintiff has at least a high school education.

8. Transferability of job skills is not an issue because Plaintiff does not have past relevant work.

9. Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform.

10. Plaintiff has not been under a disability, as defined in the Social Security Act, since December 20, 2019, the date the application was filed.

(AR 20-26.)

## C.     Plaintiff's Testimony

### 1.     March 10, 2020 Adult Function Report

On March 10, 2020, Plaintiff completed an adult function report.  (AR 287-94.)  Plaintiff stated his ability to work is limited because, every time he starts to do yard work, he hears loud voices messing with his mind.  It is hard to handle tools, he cannot sleep at night due to bad dreams, nightmares, seeing things that keep him up all night, not resting, and being too tired to do anything in the morning.  (AR 287.)  On a typical day, Plaintiff gets up and brushes his teeth, eats breakfast, goes to the park, and walks around.  He goes to the Fresno malls, the library and reads a few books and looks at magazines, then goes home, watches television and goes to bed.  Plaintiff feeds and waters the cats and dog.  His sister will also feed the animals, takes them for walks and cleans them.  (AR 288.)

Plaintiff's sleep is affected because he hears voices while sleeping, has nightmares, and sees things that touch his body.  He does not bathe often because he cannot see and shakes, he is afraid to wash his hair.  It is hard to shave because of the voices and to use the toilet because he sees things coming out.  (AR 288.)  He needs reminders to put on his clothes, take a bath, and brush his teeth.

3

Most of the time he forgets to take his medication.  He does not prepare food.  He does the laundry and rakes the yard, but he needs a helping hand.  (AR 289.)  Plaintiff goes outside twice a day.  He is able to go out alone.  He does not drive because he is afraid of cars.  He shops once a year for fifteen hours for clothing.  He has never had a savings account and does not know how to use a check book or money order.  He can count change.  (AR 290.)

Plaintiff's hobbies are reading a good book and newspaper, playing cards, and walking the dog.  He does these things three times a day.  He finds it hard to focus on his day and to think what he is going to do each day.  Plaintiff attends a Bible study once a week and attends church once a week.  He does not need someone to accompany him.  (AR 291.)  Plaintiff does not have any problems getting along with others.  (AR 292.)

Plaintiff's conditions affect seeing, memory, understanding, following instructions, and using his hands.  He forgets to change his clothing and take his medication.  It is hard to follow what people are saying because of the voices.  Plaintiff can pay attention for thirty seconds and he does not start what he finishes.  Plaintiff gets confused following written instructions.  He can sometimes follow spoken instructions when they are spoken slowly.  (AR 292.)  He gets along fine with authority figures.  He has not noticed any unusual behavior or fears.  (AR 293.)  Plaintiff takes Risperdal, metformin, and Glyburide and has no side effects from his medication.  (AR 294.)

2.   November 15, 2022 Hearing Testimony

Plaintiff testified at the November 15, 2022 hearing.  (AR 37-53.)  Plaintiff lives with his sister, her two sons and a daughter.  (AR 37.)  There are seven people that live in the house.  (AR 38.)  He had a chihuahua that died about two weeks prior to the hearing, and his nephew got him a big dog.  (AR 43-44.)

Plaintiff graduated from high school and attended some college.  (AR 38-39.)   He has not worked in the last fifteen years, just doing side jobs, like mowing lawns and trimming trees.  He used to work every day but has not worked in the past year.  (AR 39.)  Plaintiff is unable to work because he was going to general relief, the voices came back in his head, and ever since the pandemic they had to stay inside.  (AR 39-40.)  His depression increased and he had anxiety that kept him from working.  When Plaintiff takes his medication, he does not hear the voices for a

while.  If he stops taking his medication, then the voices are back within 24 hours.  (AR 40.)  When he was taking less medication, he could still hear the voices.  Now that they have increased his medication, he hears them sometimes.  He forgets to take his medication a lot.  (AR 41.)  He used to hear voices every day but since they increased his medication, he hears voices twice a day depending on what he is doing.  (AR 49.)

Plaintiff has been forgetting things for the last three or four years.  (AR 41.)  He forgets to shower, feed the dog, go to the grocery store, take his medication, clean up the yard, and dump the garbage can.  He does not do his chores when he is too tired.  Sometimes he has nightmares.  Before his medication, he used to have nightmares every night.  (AR 42.)  With his medication he does not get them as often, maybe two or three nights a week.  (AR 43, 50.)

During a typical day, Plaintiff's sister cooks him breakfast, he feeds and plays with his dog, he dumps the garbage, sweeps the floor, and makes his bed.  (AR 43-44.)  He will watch his two or three-year-old nieces, playing with them and getting them their bottles.  Most days he leaves the house.  (AR 44.)  He will catch the bus and go down to the mall and talk to his friends.  They talk about old times or current events.  (AR 45.)  Sometimes when he gets up in the morning, he will do exercises, he jogs around Edison High School because of his diabetes.  (AR 46-47.)  He has had problems with his blood sugar and has changed his diet and is taking medication to control his blood sugar.  (AR 47.)  He has been taking diabetic education classes.  He remembers the classes, takes notes, and is given educational papers to take home.  (AR 48.)

Plaintiff is unable to work because his medication only lasts for two or three hours and then the voices come back.  When he tries to do work activity, he hears two or three voices telling him to do things, like to hurt himself or other people.  (AR 45.)  He is afraid to be around a group of teenagers because he thinks they are a gang and want to harm him.  He has been afraid for about five years after some kids tried to rob him.  (AR 46.)

### D.   Medical Record

Plaintiff was seen on May 7, 2014, for a diabetes follow-up reporting he felt well and had no complaints.  (AR 411.)

On May 31, 2014, Plaintiff was seen for high blood sugar.  He was advised that insulin was

the best treatment option but did not want to take insulin.  (AR 405.)  His schizophrenia was noted to be currently asymptomatic and controlled with Risperdal.  He endorsed hearing voices occasionally but was able to ignore them.  (AR 406.)

Plaintiff was seen on August 20, 2018, reporting a fair mood, mild depression, periodic auditory hallucinations making derogatory comments, paranoia at times, and seeing shadows in the periphery of his vision.  He was disheveled with poor hygiene.  Other than his reported hallucinations, examination was otherwise unremarkable.  (AR 357.)

On November 13, 2018, Plaintiff reported an increase in auditory hallucinations and had run out of his medication eight days prior.  He reported he had lost some of his pills and did not think he could get an early refill.  Examination notes he was disheveled, with poor hygiene.  Speech was slow, and there are random auditory hallucinations noted.  Otherwise, examination is unremarkable.  (AR 355.)  The record notes that he has been off his medication for eight days and was having mild auditory hallucinations.  (AR 356.)

Plaintiff was seen on February 4, 2019, reporting baseline auditory hallucinations making random comments.  He felt the Risperdal was helpful.  Thought content notes positive auditory hallucinations with random comments but was otherwise unremarkable.  (AR 353.)

On July 9, 2019, Plaintiff reported a good mood and that he recently visited his family in Southern California and enjoyed himself.  He was having daily hallucinations making random comments and occasionally was forgetting his medication.  He remembers to take it when the voices become more frequent.  He reported good sleep and appetite and had no complaints.  Thought content notes positive auditory hallucinations with random comments but was otherwise unremarkable.  (AR 351.)

Plaintiff was seen on October 1, 2019, and reported a stable mood.  He reported baseline auditory hallucinations which make random comments and good self-care.  Thought content notes positive auditory hallucinations with random comments but was otherwise unremarkable.  (AR 349.)

On October 24, 2019, Plaintiff was seen for diabetic care.  (AR 367.)  He was noted to be engaged throughout the visit.  (AR 367, 368.) He reported exercising every other day by walking

1  or lifting weights at home.  (AR 368.)    Physical examination notes he was alert and oriented times

2  three with no acute distress.  (AR 369.)  His schizophrenia is noted to be well controlled.  (AR 370.)

3      Plaintiff was seen on November 7, 2019, for lab results and lower back pain.  He reported

4  taking his medications as prescribed.  He was doing landscaping parttime and walking.  His last

5  auditory hallucination was more than a week prior.  He reported doing well by talking regularly

6  with his psychiatrist and taking his Risperdal.  (AR 362.)  Examination notes he is alert, awake, and

7  in no acute distress.  (AR 363.)  His psychiatric symptoms are noted to be well controlled with

8  Risperdal.  (AR 364, 365.)

9      On December 23, 2019, Plaintiff was seen for a medication refill.  Plaintiff denied command

10  auditory hallucinations, manic symptoms, and bizarre delusions.  He reported good sleep and

11  appetite.  He reported compliance with his medication with no side effects.  He had no complaints

12  at this time.  (AR 346.)  Mental examination notes some paucity of speech, thought content was

13  positive for auditory hallucinations, occasional, random comments but was otherwise

14  unremarkable.  (AR 347, 402.)

15      Plaintiff failed to appear for his appointment on March 23, 2020, and May 11, 2020.  (AR

16  393.)

17      On September 15, 2020, and December 14, 2020, Plaintiff reported a good mood, sleeping

18  eight hours, and good self-care.  He denied any hallucinations or paranoia.  Mental examination

19  was unremarkable.  (AR 396, 400.)

20      Plaintiff was seen on January 17, 2022, having run out of his diabetic medication and was

21  not checking his blood sugars at home.  His schizophrenia is noted to be controlled with Risperdal.

22  (AR 480.)  Examination notes that he is alert and oriented times three with no acute distress.  (AR

23  482.)

24      On February 28, 2022, Plaintiff was seen for a follow-up.  It is noted that his schizophrenia

25  is well controlled on medication.  (AR 467.)  Examination notes that he is alert and oriented times

26  three with no acute distress.  (AR 469.)

27      Plaintiff was seen on March 28, 2022, for follow-up.  He reported adherence to his

28  medication.  (AR 459.)  Examination notes that he is alert and oriented times three with no acute

distdistress.  (AR 461.)

On April 8, 2022, Plaintiff was seen for diabetic self-management education.  He was noted to be engaged and asked questions.  (AR 424.)

Plaintiff was seen on May 5, 2022, for a follow-up denying any active complaints and reporting compliance with his medication.  (AR 452.)  Examination notes that he is alert and oriented times three with no acute distress.  (AR 452.)

On May 13, 2022, Plaintiff was seen for diabetic self-management education reporting he was taking all his medications and verbalized good understanding of the information that was covered.  (AR 433.)

Plaintiff was seen on June 16, 2022, for a follow-up and reported adherence to his medication.  (AR 446.)  He was noted to be alert and oriented times three with no acute distress.  (AR 448.)

On July 22, 2022, he was seen for diabetic self-management and the verbalized good understanding of the information discussed.  The record notes he did excellent sorting food models into carbs and not carb containing groups and engaged in education.  He demonstrated good understanding of recommended serving sizes.  (AR 437.)

Plaintiff was seen on September 26, 2022, for a follow-up and denied any complaints.  (AR 439.)  His schizophrenia was noted to be well controlled with Risperdal.  (AR 441.)  Mental examination notes he is alert and oriented times three with no acute distress.  (AR 442.)

On October 26, 2022, a mental disorder questionnaire was completed.  (AR 497-98.)  Nurse practitioner Saucier stated that Plaintiff had attended three counseling appointments that were scheduled, and it was unknown if he needed assistance to keep his appointments.  He has no posture, gait, mannerisms, or general appearance that would impair his ability to work.  The section regarding mental impairments that would impair his ability to work was not completed.  In response to the question regarding whether mood or affect are affected to the degree that it would impair his ability to work, the nurse did not check yes or no.  She wrote taking meds will help with mood and also flat affect.  Plaintiff was diagnosed with paranoid schizophrenia.  Plaintiff has a significant impairment of hallucinations and delusional or paranoid thoughts.  (AR 497.)

Plaintiff's activities of daily living have not been impaired to the point that he needs assistance from others to achieve a socially acceptable standard of care.  It was unknown if his social functioning had been affected.  Stress common to a normal work environment could exacerbate his symptoms.  His medications have side effects of tardive dyskinesia and tremors. Plaintiff is presently stable.  He was first seen in July 2022 and last examined in October 2022. (AR 498.)

### III.

### LEGAL STANDARD

#### A.    The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must show he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[2] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520;[3] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.

Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled.  If not, proceed to step four.

Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not,

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

[3] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only supplemental security income in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

1    proceed to step five.

2    Step five: Does the claimant's RFC, when considered with the claimant's age,
     education, and work experience, allow him or her to adjust to other work that exists in
3    significant numbers in the national economy?  If so, the claimant is not disabled.  If
     not, the claimant is disabled.

4

5    Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is

6    on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A

7    claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of

8    proof from step one through step four.

9         Before making the step four determination, the ALJ first must determine the claimant's

10   RFC.  20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971,

11   at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [her] limitations"

12   and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1);

13   416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are

14   not severe.  20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p,

15   available at 1996 WL 374184 (Jul. 2, 1996).[4]  A determination of RFC is not a medical opinion,

16   but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. §§

17   404.1527(d)(2) (RFC is not a medical opinion); 404.1546(c) (identifying the ALJ as responsible for

18   determining RFC).  "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine

19   residual functional capacity."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

20        At step five, the burden shifts to the Commissioner, who must then show that there are a

21   significant number of jobs in the national economy that the claimant can perform given his RFC,

22   age, education, and work experience.  20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d

23   1111, 1114 (9th Cir. 2006).  To do this, the ALJ can use either the Medical Vocational Guidelines

24   ("grids") or rely upon the testimony of a VE.  See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsburry,

25   468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  "Throughout the five-

26

27   [4] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20
     C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they
28   are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir.
     1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

1  step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical

2  testimony, and for resolving ambiguities.' " Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala,

3  53 F.3d 1035, 1039 (9th Cir. 1995)).

4  **B.    Standard of Review**

5  Congress has provided that an individual may obtain judicial review of any final decision

6  of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In

7  determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by

8  the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

9  Further, the Court's review of the Commissioner's decision is a limited one; the Court must find

10 the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. §

11 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).  "Substantial evidence is relevant

12 evidence which, considering the record as a whole, a reasonable person might accept as adequate

13 to support a conclusion." Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002) (quoting

14 Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also Dickinson

15 v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential

16 clearly erroneous standard).  "[T]he threshold for such evidentiary sufficiency is not high." Biestek,

17 139 S. Ct. at 1154.  Rather, "[s]ubstantial evidence means more than a scintilla, but less than a

18 preponderance; it is an extremely deferential standard." Thomas v. CalPortland Co. (CalPortland),

19 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); see also Smolen v.

20 Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  Even if the ALJ has erred, the Court may not reverse

21 the ALJ's decision where the error is harmless.  Stout, 454 F.3d at 1055–56.  Moreover, the burden

22 of showing that an error is not harmless "normally falls upon the party attacking the agency's

23 determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

24 Finally, "a reviewing court must consider the entire record as a whole and may not affirm

25 simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153,

26 1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).

27 Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may

28 review only the reasons stated by the ALJ in his decision.  Orn v. Astrue, 495 F.3d 625, 630 (9th

1   Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  Nonetheless, it is not

2   this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment

3   for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is

4   the ALJ's conclusion that must be upheld."  Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart,

5   400 F.3d 676, 679 (9th Cir. 2005)).

**IV.**

**DISCUSSION AND ANALYSIS**

8       Plaintiff raises three issues on appeal: 1) the ALJ erred by misapplying the Chavez

9   presumption of continuing nondisability in evaluating the claim; 2) the RFC is not supported by

10  substantial evidence; and 3) the ALJ failed to provide clear and convincing reasons to reject his

11  symptom testimony.  (Pl.'s Mot. for Summary Judgment ("Mot.") 5,[5] ECF No. 17.)

**A.       Whether the ALJ Erred by Continuing to Apply the Chavez Presumption of Continuing Disability**

14      Plaintiff argues that the ALJ erred by continuing to apply the Chavez presumption of

15  continuing non-disability.  Plaintiff asserts that the presumption has been rebutted because there

16  was a material change in age category.  (Mot. at 10.)  In the opinion, the ALJ found "[n]o material

17  changes exist since the prior administrative law judge decision, and the prior ALJ determination is

18  adopted, and the presumption of continuing nondisability has not been rebutted."  (AR 18.)

19      There was a prior decision denied on August 16, 2018, and where the Appeals counsel

20  denied review, that decision is final and binding.  20 C.F.R. ¶ 404.905; Chavez v. Bowen, 8444

21  F.2d 691, 692 (1988).   The doctrine of res judicata applies in administrative proceedings,

22  although it is less rigidly applied to administrative proceedings.  Chavez, 844 F.2d at 693.

23      The Ninth Circuit has held that a finding that the claimant is not disabled creates a

24  presumption that the claimant continues to be able to work after that date.  Lester v. Chater, 81

25  F.3d 821, 827 (9th Cir. 1995).  The prior finding that the claimant was not disabled cannot be re-

26  litigated through date of the prior decision.  Giancola v. Colvin, 31 F.Supp.3d 1215, 1220-21

---

[5] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

1    (E.D. Wash. 2014).  "[I]n order to overcome the presumption of continuing nondisability arising

2    from the first administrative law judge's findings of nondisability, [a claimant] must prove

3    'changed circumstances' indicating a greater disability."  Chavez, 844 F.2d at 693 (quoting Taylor

4    v. Heckler, 765 F.2d 872, 875 (9th Cir.1985)).  This can be done by showing a worsening of

5    symptoms or other changes such as the existence of a new impairment not considered in the

6    previous application or a change in the claimant's age category.  Lester, 81 F.3d at 827.  The

7    burden of proof is on the claimant to show that he is disabled and on a subsequent application for

8    benefits the claimant has the burden of rebutting the presumption of continuing nondisability.

9    Lyle v. Secretary of Health and Human Services, 700 F.2d 566, 568 (9th Cir. 1983).

10          Plaintiff argues that he was a few days short of turning 54 years old on the date of the

11    decision which would put him in a "borderline age" situation where he would be considered

12    "advanced age."  (Mot. at 10-11.)  Defendant counters that the ALJ considered that Plaintiff was

13    an individual closely approaching advanced age based on the date of filing the current application

14    and Plaintiff has failed to show error.  (Def.'s Responsive Brief ("Opp.") 4, ECF No. 21.)  In the

15    reply, Plaintiff appears to drop the argument that he should have been considered borderline age

16    and argues that he has shown a material change based on the change in age category and the increase

17    in the severity of his symptoms.  (Pl.'s Reply ("Reply") 2, ECF No. 24.)

18          The ALJ considered that Plaintiff was born on November 27, 1968, and was 51 years old,

19    which is defined as an individual closely approaching advanced age, on the date the application was

20    filed.  (AR 25.)  On the date of the decision, December 5, 2022, Plaintiff had just turned 54 years

21    old.  While Plaintiff argues that he should have been considered a borderline age situation, the

22    regulations provide:

23          We will use each of the age categories that applies to you during the period for which
            we must determine if you are disabled.  We will not apply the age categories
24          mechanically in a borderline situation.  If you are within a few days to a few months
            of reaching an older age category, and using the older age category would result in
25          a determination or decision that you are disabled, we will consider whether to use
            the older age category after evaluating the overall impact of all the factors of your
26          case.

27    20 C.F.R. § 404.1563(b).

28          The relevant age categories are defined as follows:

13

(d) Person closely approaching advanced age.  If you are closely approaching advanced age (age 50–54), we will consider that your age along with a severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work.

(e) Person of advanced age.  We consider that at advanced age (age 55 or older), age significantly affects a person's ability to adjust to other work.  We have special rules for persons of advanced age and for persons in this category who are closely approaching retirement age (age 60 or older).

20 C.F.R. § 404.1563(d)(e).

Here, Plaintiff had just turned 54 years old less than two weeks prior to the issuance of the decision and was not "within a few days to a few months of reaching an older age category."  The ALJ properly considered Plaintiff's age category in the decision.  However, the ALJ erred by finding that the continuing presumption of disability continued to apply as the change in age category since the prior decision was sufficient to rebut the Chavez presumption of continuing disability.  Vasquez v. Astrue, 572 F.3d 586, 598 (9th Cir. 2009); Oberg v. Astrue, 472 F. App'x 488, 490 (9th Cir. 2012); Arthur C. v. Saul, No. 5:18-CV-01948-MAA, 2019 WL 5420445, at *3 (C.D. Cal. Oct. 23, 2019).

The question then is whether this error is harmless, especially given that the ALJ did consider the proper age category in coming to his decision.  "An error in a Social Security proceeding is harmless when 'it is inconsequential to the ultimate nondisability determination.' "  Arthur C., 2019 WL 5420445, at *3 (quoting Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015).)  In the context of the inappropriate application of the Chavez presumption of continuing disability, the error is harmless if the ALJ also "conducted a thorough review of the medical records and testimony to make an independent nondisability finding."  Plummer v. Berryhill, 747 F. App'x 631, 632 (9th Cir. 2019); see also Cha Yang v. Comm'r of Soc. Sec. Admin., 488 F. App'x 203, 204 (9th Cir. 2012) (finding error harmless where the ALJ weighed the medical evidence in determining the claimant's residual functional capacity).  For the reasons discussed below, the Court finds that any error in applying the Chavez presumption of continuing disability was harmless as the ALJ weighed the evidence in the record and the decision is supported by substantial evidence.

**B.      Whether the Mental RFC is Supported by Substantial Evidence**

Plaintiff asserts that the mental RFC finding is not supported by substantial evidence because the ALJ found that <u>Chavez</u> applied and there is a well-documented increasing severity of his schizophrenia.  (Mot. at 11.)  Plaintiff argues that the ALJ found the opinion of Ms. Saucier partially persuasive and erred by failing to provide adequate supportability and consistency analysis.  Plaintiff asserts that the ALJ failed to account for Ms. Saucier's opinion that stress common to the normal work environment may exacerbate his symptoms of hallucination, delusion, and paranoid thoughts such that they would impair his ability to perform full-time work week after week, and that Plaintiff suffered side effects from his medication, including tardive dyskinesia and tremors that would impair his ability to work.  (<u>Id.</u> at 12.)

1.      <u>Weighing Medical Opinions and Prior Administrative Medical Findings</u>

Under regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources."  20 C.F.R. §§ 404.1520c(a); 416.920c(a).  Thus, the regulations require an ALJ to apply the same factors to all medical sources when considering medical opinions, and no longer mandate particularized procedures that the ALJ must follow in considering opinions from treating sources.  <u>See</u> 20 C.F.R. § 404.1520c(b) (the ALJ "is not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually.");  <u>Trevizo v. Berryhill</u>, 871 F.3d 664, 675 (9th Cir. 2017).

"When a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; [and] (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. §§ 404.1520c(a), (c)(1)–(5).  The most important factors to be applied in evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency.  <u>Woods v. Kijakazi</u>, 32 F.4th 785, 791 (9th Cir. 2022) (citing 20 C.F.R. §§ 404.1520c(a), (b)(2)).

Regarding the supportability factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions … will be."  20 C.F.R. § 404.1520c(c)(1).  Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be." 20 C.F.R. § 404.1520c(c)(2).

Accordingly, the ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors.  20 C.F.R. § 404.1520c(b)(2).  The ALJ "may, but [is] not required to, explain how [he] considered the [other remaining factors]," except when deciding among differing yet equally persuasive opinions or findings on the same issue.  20 C.F.R. §§ 404.1520c(b)(2)–(3).  Further, the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources."  20 C.F.R. § 404.1520c(d).  Nonetheless, even under the new regulatory framework, the Court still must determine whether the ALJ adequately explained how he considered the supportability and consistency factors relative to medical opinions and whether the reasons were free from legal error and supported by substantial evidence.  See Martinez V. v. Saul, No. CV 20-5675-KS, 2021 WL 1947238, at *3 (C.D. Cal. May 14, 2021).

### 2.    ALJ's Findings

The ALJ considered the prior administrative findings of the state agency medical consultants.  On April 23, 2020, Dr. Schwartz reviewed the record and indicated that the medical evidence indicates that Plaintiff sometimes has visual and auditory hallucinations but is generally stable with some periods of noncompliance secondary to forgetfulness.  Dr. Schwartz found that the current evidence reveals fair grooming, some paucity of speech and occasional auditory hallucinations.  Dr. Schwartz found the medical record did not indicate any material change and Plaintiff was able to perform simple tasks with no public contact.  (AR 24, 90.)

The ALJ also considered that on March 9, 2021, Dr. Goosby reviewed the record and affirmed the conclusion that Plaintiff had mild limitations in understanding, remembering or applying information; moderate limitations in interacting with others, moderate limitations in

concentrating, persisting or maintaining pace, and no problems adapting or managing himself.  (AR 24, 105-06.)  The ALJ found this opinion to be very persuasive as it is consistent with the overall evidence of record, which includes generally normal mental status findings, no active complaints, intact cognition, reports of good self-care, and schizophrenia that is well-controlled with medication.  (AR 24-5, 346-59, 360-90, 466-71.)

Finally, the ALJ considered that Ms. Saucier completed a mental disorder questionnaire dated October 26, 2022.  (AR 497-98.)  She noted that Plaintiff had attended three consecutive appointments as scheduled.  He had no posture, gait, mannerisms, or general impairment problem that would impair his ability to work.  She did not answer questions regarding Plaintiff's ability to remain oriented, memory, concentration, intelligence, or judgment.  Nor did she answer questions regarding Plaintiff's mood and affect or whether they would affect his ability to work.  Ms. Saucier stated that Plaintiff was taking medications that help his mood but can cause a flat affect.  She noted Plaintiff experienced hallucinations and delusional or paranoid thoughts that caused a significant impairment in his ability to work.  (AR 25, 497.)  He does not need assistance with activities of daily living, and his social functioning was unknown to her.  Ms. Saucier noted that stress common to the normal work environment could escalate his symptoms.  Plaintiff's prescribed medications cause adverse side effects including tremors and tardive dyskinesia.  She noted that Plaintiff is currently stable.  (AR 25, 498.)  The ALJ found that the opinion is somewhat persuasive, noting the issues with hallucinations which is supported by the overall record.  However, the record suggests that Plaintiff's symptoms are largely managed with medications and the opinions of the state agency physicians align with the findings of the provider as well as the overall record.  (AR 25.)

3.    Analysis

Plaintiff argues that Ms. Saucier's opinion is not consistent with a finding that his symptoms are largely managed by compliance with medication.    Plaintiff contends that the ALJ mischaracterizes the treatment record by the non-specific citation to the treatment records and the reason is not supported by substantial evidence for the finding that his symptoms were well controlled with medication.  (Mot. at 13.)  While Plaintiff argues that notations that he was doing well or was stable on his medication do not contradict functional limitation, here the ALJ did not

rely solely on notations that Plaintiff was doing well or was stable on his medications.  The ALJ pointed to specific records that state that Plaintiff's symptoms are well controlled with medication compliance and his reports that he was not having psychotic symptoms.

The ALJ noted that on December 23, 2019, Plaintiff was seen for follow up of his paranoid schizophrenia and was noted to be stable on medication.  (AR 23, 346-48.)    In September 2020, Plaintiff denied depression, manic or psychiatric symptoms, including auditory hallucinations, visual hallucinations, or paranoia.  (AR 23, 396.)  In December 2020, Plaintiff reported a good mood with no symptoms.  (AR 23, 400.)  On February 28, 2022, he was noted to have schizophrenia that was controlled with medication.[6]  (AR 23, 467.)  In May and September of 2022, he reported no active complaints.  (AR 24, 439, 452.)  Further, the latest records considered by the ALJ note that Plaintiff's symptoms are controlled with Risperdal.  (AR 406, 408, 441, 467, 480.)

Plaintiff contends that a review of these records show that Plaintiff continued to hear voices while on medication and continues to be diagnosed with acute schizophrenia and notations that his schizophrenia is well controlled are in the records by his non-psychological specialist treating his diabetes and back pain.  (Mot. at 15.)  The ALJ did consider that Plaintiff continued to hear voices on medication and was diagnosed with schizophrenia, but he also considered that the objective findings in the record were otherwise generally normal.  (AR 23-24.)  While Plaintiff argues that notations that his schizophrenia is well-controlled are by his non-psychological specialist treating his diabetes and back pain, the ALJ also noted Plaintiff's mental health provider records in which he denied symptoms and was noted to be doing well on his medication.  (AR 346 (no complaints), 347 (occasional auditory hallucinations), 349 (reports baseline auditory hallucinations, but no command auditory hallucinations), 351 (reports daily auditory hallucinations but sometimes forgets to take his medication), 353 (reports baseline auditory hallucinations), 353-54 (reports increase in auditory hallucinations which are noted to be mild after having been out of medication for eight days), 357 (reports periodic auditory hallucinations and feels paranoid at times), 362 (doing well

---

[6] The Court notes that the ALJ stated the appointment was March 1, 2022, however while the record was signed on March 1, 2022, the appointment is dated February 28, 2022.  (AR 465.)

1  on medication and last auditory hallucination was one week prior); 396 (denied psychiatric

2  symptoms), 400 (denied psychiatric symptoms).[7]

3        Plaintiff argues that the ALJ failed to account for Ms. Saucier's limitation on stress common

4  to the normal work environment, however the ALJ found that Ms. Saucier's opinion was somewhat

5  persuasive as it was supported by the overall record which notes hallucinations.  But the ALJ found

6  it was inconsistent with the medical record which suggested his symptoms were well controlled

7  with compliance with medications.  (AR 25.)  The ALJ reasonably gave more weight to the opinions

8  of the state agency consultants who opined that Plaintiff was able to perform simple tasks with no

9  public contact.  (AR 24, 90, 105-06.)   The ALJ is not required to incorporate evidence from the

10 opinions of treating physicians whose opinions were permissibly discounted.  Batson, 359 F.3d at

11 1197.

12        To the extent that Plaintiff argues that his self-reports in the medical record do not support

13 the RFC, the ALJ is not required to credit a claimant's subjective complaints simply because they

14 are recorded in his physician's records.  Sager v. Colvin, 622 F. App'x 629, 629 (9th Cir. 2015)

15 (citing Batson, 359 F.3d at 1195).

16        Finally, to the extent that Plaintiff argues that the ALJ erred by failing to consider Ms.

17 Saucier's statement that his medications cause tardive dyskinesias and tremors, the ALJ did

18 consider this evidence.  (AR 25.)  Plaintiff points to no evidence of such symptoms in the record

19 that would support any error by the ALJ.  Rather, as Defendant argues, Plaintiff consistently denied

20 any side effects from his medication.  (AR 294, 307, 349, 351, 353, 355, 357, 393, 396, 398, 400,

21 402.)  Accordingly, to the extent that the ALJ did err by failing to directly address side effects from

22 medication, it would be harmless error.  ALJ's decision will not be reversed for errors that are

23 harmless.  Burch, 400 F.3d at 679.

24

---

25 [7] Plaintiff cites to "McKenzie v. Kijakazi, Case No. 1:20-cv-0327-JLT-2021 WL 42799015 (E.D. Cal. Sept, 20, 2021)," however, the Westlaw citation provided does not bring up a document with this caption.  Review of the

26 decision issued in the action on the court's docket shows that the ALJ in the matter stated that the progress notes show that the claimant was stable on medication and tolerates the medication without side effects "citing Exh. B9F-

27 12F)".  (Order Granting Pl.'s Req. for Judicial Review, 17, ECF No. 23.)  Here, the ALJ did not just broadly cite to exhibits, but discussed specific records and the evidence that supports his finding that Plaintiff's symptoms were

28 controlled with compliance with medication.

1    The Court finds that substantial evidence supports the ALJ's mental RFC findings.

2    **C.      Whether the ALJ Failed to Provide Clear and Convincing Reasons to Discredit**
     **his Symptom Testimony**
3

4    Plaintiff contends that the ALJ committed harmful error by failing to provide clear and

5    convincing reasons to reject his symptom testimony.  Plaintiff states that the ALJ found that

6    Plaintiff met the first step because the ALJ found that his schizophrenia could reasonably be

7    expected to cause the alleged symptoms, so the only issue is whether the ALJ provided specific,

8    clear and convincing reasons to find that his testimony was inconsistent with the medical and other

9    evidence in the record.  (Mot. at 19.)  Plaintiff argues that the only indication that the ALJ even

10   attempted to reject his symptom testimony absent "stock language" is the ALJ's "cherry-picked"

11   and "mischaracterized" discussion of his testimony which incorrectly depicts him as more

12   functional than he is.  (Mot. at 20.)

13   Plaintiff argues that the ALJ failed to address that while his symptoms improved on higher

14   dosages of his medication, he still hears voices two times per day, has nightmares once or twice a

15   week, and the medication only lasts for two to three hours and then the voices come back.  Plaintiff

16   also argues that the ALJ did not discuss that when he has nightmares he will stay up for a while

17   frustrated and depressed because he cannot sleep, will go to sleep late and wake up tired.  Further,

18   Plaintiff contends that the ALJ did not discuss his testimony that he suffers from memory problems

19   and forgets to take his medication.  (Id. at 21.)  Plaintiff also asserts that the ALJ mischaracterizes

20   the evidence because despite the fact that Plaintiff takes care of his dog, performs chores around

21   the house and his own activities of daily living, he also testified that he forgets to perform these

22   activities and often forgets his medication and his sister reminds him to do things.  (AR 22.)

23   Plaintiff also asserts that there is no indication that he performs activities on a consistent basis such

24   that they translate into his ability to sustain normal work activity eight hours a day five days a week.

25   (AR 23-4.)  Finally, Plaintiff argues that even if Plaintiff was hearing voices two to three times per

26   week while complaint with medication, this would be outcome determinative as the VE testified

27   that there would be no work for a person who was absent or leaves work early two days a week or

28   would be off task 15 percent of an 8 hour workday.  (AR 24-5.)

1    Defendant counters that the ALJ's decision conforms with the legal standards for
2   discrediting symptom testimony.  (Opp. at 13.)  Defendant asserts that the ALJ considered that
3   Plaintiff reported he was unable to work because he hears thing, that when he takes his medication,
4   he does not hear voices for a while, but sometimes forgets his medication.  The ALJ then considered
5   the objective medical evidence which showed intact cognition and other normal, good, intact, and
6   average findings on examination which are substantial evidence to support the ALJ's finding.  (Id.)

7    Defendant argues that the findings are also reinforced by the ALJ's conclusion that his
8   symptoms were largely managed with medication.  (Id.)  Further, Defendant contends that the ALJ
9   considered that Plaintiff demonstrated no more than moderate limitations in his ability to
10  concentrate, maintain pace, and persist.  The ALJ also noted that Plaintiff was able to remember
11  recent remote details of his life and to complete the disability form, had no problems getting along
12  with others, and attended weekly bible study.  (Id. at 14.)  Defendant further contends that the ALJ
13  considered that in 2019 Plaintiff's cognition was grossly intact and mental examinations were
14  normal; in 2020 Plaintiff reported a good mood and denied depression, auditory or visual
15  hallucinations, and paranoia and had good self-care with no complaints and mental examination
16  was within normal limits.  Defendant asserts that these observations, admissions, and findings are
17  ample reason to discount Plaintiff's symptoms complaints.  (Id. at 14-5.)  Defendant also asserts
18  that Plaintiff's testimony that he takes care of his dog, does chores around the home, goes to the
19  mall daily to talk with his friends, and gets up and exercises in the morning also support the decision.
20  (Id. at 15.)

21   Defendant argues that while Plaintiff contends that the ALJ cannot discount his symptom
22  complaints based on their improvement he is mistaken; his testimony that he finds comfort in his
23  dog does not negate the testimony that he cares for his dog, and his claim that he is forgetful due to
24  his lack of sleep is merely an attempt to rewrite his testimony.  (Id.)  Defendant asserts that Plaintiff
25  has failed to show that the ALJ erred, and he assumes without support in the record that he would
26  be off task or absent from work due to hearing voices, but his conclusory statements do not satisfy
27  his burden of proof, much less demonstrate harmful error.  (Id. at 16.)

28   In reply, Plaintiff reasserts the arguments in his motion for summary judgment.  (Reply 8.)

1.    <u>Legal Standard</u>

A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability.  42 U.S.C. § 423(d)(5)(A); SSR 16-3p; <u>see also</u> <u>Orn</u>, 495 F.3d at 635 ("An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment.").  Rather, an ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  <u>See</u> <u>Garrison v. Colvin</u>, 759 F.3d 995, 1014 (9th Cir. 2014); <u>Smolen</u>, 80 F.3d at 1281; SSR 16-3p, at *3.  First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  <u>Garrison</u>, 759 F.3d at 1014; <u>Smolen</u>, 80 F.3d at 1281–82.  If the claimant satisfies the first step and there is no evidence of malingering, "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so."  <u>Lambert v. Saul</u>, 980 F.3d 1266, 1277 (9th Cir. 2020) (citations omitted).

If an ALJ finds that a claimant's testimony relating to the intensity of his pain and other limitations is unreliable, the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive.  The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.  In this regard, questions of credibility and resolutions of conflicts in the testimony are functions solely of the Secretary.  <u>Valentine v. Astrue</u>, 574 F.3d 685, 693 (9th Cir. 2009) (quotation omitted); <u>see also</u> <u>Lambert</u>, 980 F.3d at 1277.

In addition to the medical evidence, factors an ALJ may consider include the location, duration, and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; conflicts between the claimant's testimony and the claimant's conduct—such as daily activities, work record, or an unexplained failure to pursue or follow treatment—as well as ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, internal contradictions in the claimant's statements and testimony, and other testimony by the claimant that appears less than candid.  <u>See</u> <u>Ghanim v. Colvin</u>, 763 F.3d 1154, 1163 (9th Cir. 2014); <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1039 (9th Cir. 2008); <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1040 (9th

Cir. 2007); <u>Smolen</u>, 80 F.3d at 1284.  Thus, the ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of his symptoms; statements and other information from medical providers and other third parties; and any other relevant evidence included in the individual's administrative record.  SSR 16-3p, at *5.

2.  <u>Analysis</u>

In addressing Plaintiff's mental impairment, the ALJ noted Plaintiff "testified in a coherent manner during the hearing[;]" "demonstrated the ability to concentrate, maintain pace and persist[;]" and was able to remember recent remote details of his life, including working off the books every day last year doing mowing and tree trimming."   (AR 21, 39.)  The ALJ also considered that moderate limitations were supported by his auditory and visual hallucinations, but he reported no problems getting along with others or authority figures and attends church weekly. (AR 21, 291, 292.)  In 2019, Plaintiff reported his mood as good and stable, with no depression and denied command hallucinations.  (AR 21, 351, 349.)  Cognition was grossly intact and mental examination was normal.  (AR 21, 351, 402.)

In 2020, Plaintiff reported a good mood and denied depression, auditory hallucinations, visual hallucinations, and paranoia.  (AR 21, 396, 400.)  He reported good self-care and had no complaints.  (AR 21, 396, 400.)  Mental status examinations were within normal limits.  (AR 21, 396, 400.)

The ALJ considered that Plaintiff alleged disability due to mental impairment, hearing things, and diabetes.  (AR 22.)  He claimed his conditions affect his ability to see, remember, understand, follow instructions, and use his hands.  (AR 22, 292.)  He reported that during the last 15 years he had done side jobs including mowing lawns and pruning trees, working every day the prior year.  (AR 22, 39.)  He reported that he stopped working because he was on general relief and his voices came back and his depression increased.  (AR 22, 39-40.)  Plaintiff stated that when he takes his medication, he does not hear voices for a while but that he sometimes forgets to take his medications.  (AR 22, 41, 289.)  His medication helps with his nightmares.  (AR 22, 42-3, 50.)  He takes care of his dog, takes out the garbage, sweeps the floor, and makes his bed.  (AR 22, 43-44.)

1   He generally goes to the mall and talks with his friends on a daily basis.  (AR 22-3, 45.)  He

2   exercises when he gets up in the morning.  (AR 23, 46-7.)

3          While the ALJ found that Plaintiff reports he is currently hearing voices two to three times

4   per week (AR 23), at the hearing, Plaintiff testified,

5          Q      Okay. And as I looked through the record, I see you do have a history and
               they call it schizophrenia, and I guess that would be --
6          A      Yeah, I do.
           Q      -- the voices. There've been times when you did and didn't hear the voices.
7          Is that correct?
           A      Yes.  When I take my medication, then I don't hear them for a while.
8          Q      Okay.
           A      Yeah.
9          Q      What happens if you stop the medications?
           A      Oh, if I -- if I stop -- one time I stopped and they – and they it came back 24
10         -- they was around me 24 hours a – a day
           Q      Okay.
11         A --    every hour --
           Q      Okay.
12         A      -- every minute. Yeah.
           Q      Now, so when you take the medications do they go away all the time or do
13         they just decrease them, how would you describe the medications effect?
           A      Well it -- it it goes and comes after the medication wears off, and sometimes
14         when I used to take less medication I – I could still still hear the voices coming in,
           you know.
15         Q      And with more medication you're not hearing them?
           A      Yeah, sometimes.
16
   (AR 41.)
17         Q So just a clarification. You said -- have they increased your mental health
              medications recently?
18         A Yeah, I had. I take – I'm still taking one pill a day.  take three or four.  [SIC]  Two
              in the morning, one in the afternoon, and two at night.
19         Q And now that you're on that kind of dosage, do you still hear the voices?
           A Sometimes, sometimes not.
20         Q Okay.  How often are you hearing voices?
           A How many times or how often?  I -- I didn't understand the question now.
21         Q Just in general, how often, is it once a month, once a week, every day, like that?
           A Well since I've had an increase, I used to hear them every day, but well I'd say
22         about twice a twice a day depending on what I'm doing.
           Q Twice a day on the increased medication?
23         A Yeah.

24   (AR 49.)

25         The ALJ found that Plaintiff's medically determinable impairment could reasonably be

26   expected to cause the alleged symptoms, but his "statements concerning the intensity, persistence

27   and limiting effects of these symptoms are not entirely consistent with the medical evidence and

28   other evidence in the record for the reasons explained in this decision."  (AR 23.)  The ALJ found

1  that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were

2  inconsistent because they were not supported by the objective evidence in the record.  (AR 23.)

3  The ALJ went on to discuss the evidence in the medical record.  (AR 23.)  Plaintiff reported

4  an increase in auditory hallucinations in November of 2018 and that he had run out of medication

5  eight days prior.  (AR 23, 355.)   In October 2019, Plaintiff reported a stable mood with no

6  depression and baseline auditory hallucinations making random comments.  (AR 23, 349.)  Plaintiff

7  failed to appear for appointments in March and May of 2020, but on September 15, 2020, and

8  December 14, 202, he reported a good mood and sleeping eight hours and denied depression, manic

9  or psychiatric symptoms with essentially normal mental examinations.  (AR 23, 396, 400.)   On

10  February 28, 2022, the record notes that his schizophrenia was well-controlled on medication, and

11  he was being followed by psychiatry.[8]  (AR 23, 466.)

12  **a.   Inconsistency with medical evidence**

13  The ALJ found that Plaintiff's symptom testimony was inconsistent with the objective

14  medical findings in the record.  (AR 23, 25.)  The determination that a claimant's complaints are

15  inconsistent with clinical evaluations can satisfy the requirement of stating a clear and convincing

16  reason for discrediting the claimant's testimony.   Regennitter v. Commissioner of Social Sec.

17  Admin., 166 F.3d 1294, 1297 (9th Cir. 1999).  The ALJ properly considered this evidence in

18  weighing Plaintiff's credibility.  "While subjective pain testimony cannot be rejected on the sole

19  ground that it is not fully corroborated by objective medical evidence, the medical evidence is still

20  a relevant factor in determining the severity of the claimant's pain and its disabling effects."

21  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)).

22  The ALJ considered that although the objective findings in the medical record showed

23  Plaintiff had hallucinations on occasion, his mental examinations were otherwise within normal

24  limits.  (AR 21, 23-5.)  While Plaintiff argues that the ALJ ignored his complaints about auditory

25  hallucinations, the ALJ noted in his opinion that despite Plaintiff reporting having auditory

26  hallucinations, the objective findings in the record consistently demonstrate normal cognition and

27

28  [8] Although the opinion notes the date of this appointment as March 1, 2022, the record is dated February 28, 2022.

mental status findings, even when Plaintiff was non-compliant with his medication. Substantial evidence in the record supports that ALJ's findings that the objective medical findings do not support his allegations that he is unable to work due to his mental impairments and hearing things. (AR 347, 349, 351, 353, 355, 357, 396, 400, 402.) Rather a review of the record reveals substantial evidence that despite his auditory hallucinations, Plaintiff's mental examinations were relatively normal.

### b.    Improvement with medication

Plaintiff argues that despite the ALJ's finding that he improved with medication, he continues to experience debilitating hallucinations and nightmares affecting his sleep and the ALJ did not discuss his testimony that his symptoms return several hours after taking his medication. While the ALJ found that Plaintiff reported hearing voices twice a week rather than twice a day, the Court finds that substantial evidence supports the ALJ's finding that the record demonstrates his hallucinations and nightmares are well controlled with medication. Specifically, Plaintiff reported that his medication was helpful, and he was doing well (AR 346, 353), he reported no hallucinations for over a week (AR 362); he denied hallucinations (AR 396, 400); and his providers noted that his schizophrenia was well controlled on Risperdal (AR 364, 365, 370, 441, 466, 480). A condition that can be effectively controlled with medication is not disabling for the purposes of determining eligibility for Social Security Insurance benefits. Warre v. Commissioner of Social Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006). Substantial evidence supports the finding that Plaintiff's mental impairments are well controlled with medication, and this is a clear and convincing reason to reject Plaintiff's symptom testimony.

### c.    Inconsistent statements

The ALJ also considered Plaintiff's inconsistent statements regarding his mental health symptoms. At the November 15, 2022 hearing, Plaintiff reported that he had auditory hallucinations and prior to the increase in his medication, he had hallucinations and nightmares daily and since the increase in his medication he had hallucinations 2 to 3 times per day and nightmares 2 to 3 times per week. (AR 22, 41, 49.) However, the ALJ noted that on September 15, 2020, and December 14, 2020, Plaintiff denied any psychiatric symptoms. (AR 23, 396, 400.) On May 9, 2022, he

denied any active complaints reporting being compliant with his medications.  (AR 24, 452.)  On September 26, 2022, Plaintiff denied any active complaints.  (AR 24, 439.)  <u>Robbins</u>, 466 F.3d at 884 (conflicting or inconsistent statements can contribute to an adverse credibility finding); <u>Light v. Soc. Sec. Admin.</u>, 119 F.3d 789, 792 (9th Cir. 1997), as amended on reh'g (Sept. 17, 1997) (credibility determination can be based on conflicts between the claimant's testimony and his own conduct, or on internal contradictions in that testimony).  Plaintiff's inconsistent statements are a clear and convincing reason to reject his symptom testimony.

### d.    ALJ's observations

The ALJ also noted that Plaintiff demonstrated the ability to concentrate, maintain pace and persist, and remember recent remote details of his life.  (AR 21.)  The ALJ's observations of Plaintiff's functioning may not form the sole basis for discrediting his testimony.  <u>Orn</u>, 495 F.3d at 639; <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1148 (9th Cir. 2001).  But the "ALJ's personal observations may be used in 'the overall evaluation of the credibility of the individual's statements.' "  <u>Orn</u>, 495 F.3d at 639 (quoting S.S.R. 96–7p at 8.)  The ALJ properly considered that during the hearing Plaintiff was able to concentrate, persist, and remember recent remote details of his life.  <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 600 (9th Cir. 1999).

The ALJ provided specific clear and convincing reasons to discredit Plaintiff's symptom testimony and Plaintiff's motion for summary judgment on this ground is denied.

### V.

### CONCLUSION AND ORDER

In conclusion, the Court finds no harmful error warranting remand of this action and Plaintiff's motion for summary judgment shall be denied.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED.  It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Lee Clarence Fane, Jr.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:    **October 3, 2024**

UNITED STATES MAGISTRATE JUDGE